Argued Oct. 28, decided Nov. 26, rehearing denied Dec. 31, 1912.

## STATE v. EMMONS.

(127 Pac. 791.)

**Intoxicating Liquors—Wrongful Sale—Evidence.**

1. In a prosecution for violation of the local option law, the State was entitled to show that accused received large shipments of liquor into dry territory a short time before the alleged sale to show the character of his business.

**Criminal Law—Best Evidence—Receipts.**

2. Where a drayman signed original receipts for liquor received from a carrier, consigned to accused in dry territory, and delivered the liquor, such receipts were not objectionable in a prosecution for violating the local option law as not the best evidence.

**Intoxicating Liquors—Wrongful Sale—Question for Jury.**

3. Where, in a prosecution for violating the local option law, it was proved that accused had received large shipments of beer at his place of business, and three days after the alleged sale the sheriff seized over four barrels of bottled liquors in accused's place of business, whether the liquor so seized was the same liquor that was shipped in by accused, and was in his store at the time of the alleged sale, was for the jury.

**Intoxicating Liquors—Local Option Law—Violation—Government License—Effect.**

4. Section 4937, L. O. L., provides that the issuance of a license or internal revenue special tax stamp by the Federal

Government to any person for the sale of intoxicating liquors shall be prima facie evidence that such person is selling intoxicating liquors. Held, that a special tax stamp authorizing accused to engage in the business of a retail dealer in "malt liquors" was prima facie evidence that accused was a retail liquor dealer, though the forms of the special tax stamp used by the Government did not describe the liquors as intoxicating as in the statute, but referred, one to "malt liquors," and the other merely to "liquors."

### Criminal Law—Weight of Evidence—Detectives.

5. Where a prosecution for violating the local option law depended for proof of a sale on the evidence of a detective, who was fully cross-examined and was corroborated by the circumstances, the weight to be given to his testimony was for the jury.

From Wallowa: JOHN W. KNOWLES, Judge.

The defendants, Al Emmons and A. H. Chapman, were convicted of selling intoxicating liquors in violation of the local option law, and they appeal.      AFFIRMED.

For appellants there was a brief and an oral argument by *Mr. Daniel Boyd.*

For the State there was a brief over the names of *Mr. Francis S. Ivanhoe,* District Attorney, and *Mr. Andrew M. Crawford,* Attorney General, with an oral argument by *Mr. Ivanhoe.*

MR. JUSTICE BEAN delivered the opinion of the court.

It appears that at the time of the alleged offense defendant Emmons was, and for some time prior thereto had been, conducting a lunch counter, and selling tobacco and soft drinks in the city of Enterprise, Oregon, and that defendant Chapman was employed by him as an assistant. Upon the trial of the case evidence was introduced tending to show the receipt by defendant Emmons of six shipments of beer and malt liquor from October 3 to October 24, 1911, the date of the alleged illegal sale. J. S. Butner, agent of the O.-W. R. & N. Railway Company, produced the freight receipts, and testified that

he delivered the freight described in those exhibits to Bruce Bros., the dray agents of defendant Emmons. The testimony of the draymen was to the effect that the freight was delivered to Emmons at his place of business. The defendant explained his possession of the goods, claiming that a portion thereof was for his own use, and a part stored for other persons.

1. Exception was saved to the introduction of the receipts, and the defense maintains that the same were incompetent. It was competent for the State to show the receipt by defendant Emmons of large shipments of liquor into dry territory a short time before the alleged sale, for the purpose of showing the character of his business. This was a circumstance to be considered by the jury together with the other evidence. *State* v. *Baker,* 67 Wash. 595 (122 Pac. 335) ; 7 Enc. Ev. 735; Woollen and Thornton, Law of Intox. Liquors, Section 952.

2. It is claimed by counsel for defendants that the receipts are not the best evidence. They appear, however, to have been the original receipts, signed by the draymen, for the freight delivered to the defendant Emmons. No error was committed in admitting this evidence.

3. On the 27th day of October, 1911, the sheriff of Wallowa County took from defendant's place of business some over four barrels of bottled liquors, a portion of which was analyzed by F. L. Shimm, a chemist, and found to be beer containing 5 per cent. alcohol. Counsel for defendants raise the question that these liquors were seized after the time of the alleged commission of the offense, and that the proceedings for the search and seizure were irregular. Therefore this evidence was incompetent. There was evidence tending to show that these shipments had been received by defendant during October. Upon the finding of liquors by the sheriff a

few days after the alleged sale, it was for the jury to say whether or not this was the same liquor that was shipped in by defendant Emmons and in store at the time of the alleged offense. *Starbeck* v. *State,* 53 Tex. Cr. R. 192 (109 S. W. 162). The proceedings for the search and seizure are not in question in this case. *People* v. *Aldorfer,* 164 Mich. 676 (130 N. W. 351).

4. Over the objection of defendants, the State introduced in evidence a license or internal revenue special tax stamp issued by the federal government to defendant Emmons for the year ending June 30, 1912, for the business of retail dealer in malt liquors. The court instructed the jury that the issuance of the license was *prima facie* evidence that the defendant A. R. Emmons, at the time alleged in the indictment, was engaged at the place named in the special tax stamp in the sale, exchanging, and giving away of intoxicating liquors. This is assigned as error mainly for the reason that the license was issued for the sale of malt liquors. The court further charged the jury that, even if they found that the defendants were engaged in the sale of intoxicating liquors, yet, before they could convict them, they must be satisfied beyond a reasonable doubt that there was a sale to one H. P. White, the person named in the indictment. As a rule, the probative force of such a license, when put in evidence, depends upon statutes authorizing their admission. 2 Woollen and Thornton, Intoxicating Liquors, Section 972, page 1730. Section 4937, L. O. L., provides that the issuance of a license or internal revenue special tax stamp by the federal government to any person for the sale of intoxicating liquors shall be *prima facie* evidence that such person is selling, exchanging, or giving away intoxicating liquors. Neither of the forms of this special tax stamp used by the government describes the liquors as intoxicating. The one describes "malt liquors" and the other "liquors."

The purpose of such license is for the sale of intoxicating liquors. While the description in the statute is not in the exact language of the revenue receipt, this is the license or special tax stamp referred to in the statute. The defendant admitted the issuance of this license, and testified in explanation thereof. Under the statute, the evidence excepted to was competent, and the instruction given as to its effect was proper. *State* v. *Kline,* 50 Or. 426 (93 Pac. 237).

5. H. P. White, a detective, who was employed to investigate in regard to the illegal sale of intoxicating liquors in the county, testified positively that he purchased the bottle of beer introduced in evidence from defendant Chapman at Emmons' place of business. This was also analyzed by the chemist and found to contain 5 per cent. alochol. In their brief, much of the argument of defendants' counsel is directed to the weight of White's testimony. He was cross-examined as to the compensation received by him and as to his connection with the case. The court instructed the jury to scrutinize his evidence and consider his interest, bias, and motives. The circumstances in the case corroborated the testimony of the detective, and it was for the jury to determine from all the evidence whether or not his statement was true. It was a question as to the weight or value of White's evidence which was properly submitted to the jury, and there was no error in the refusal of the court to direct a verdict of acquittal as requested by the defense.

Other errors are assigned, which we have examined, but which we do not deem of merit. The testimony and the instructions of the court to the jury are all contained in the record. After consideration of all the matters submitted, we cannot say that there was no competent evidence to support the verdict. The case was fairly submitted to the jury, and its verdict should not be disturbed.

The judgment of the lower court is therefore affirmed.

AFFIRMED.