Argued July 11, decided July 24, 1917.

# STATE v. HOFFMAN.

### (166 Pac. 765.)

**Jury—Qualifications—Credibility of Witnesses.**

1. In a nuisance prosecution for selling intoxicating liquors, the state cannot question prospective jurors regarding their prejudice against the testimony of witnesses obtaining information solely for purposes of prosecution.

> [As to the bias or prejudice or interest that disqualifies a juror, see note in 9 Am. St. Rep. 744.]

**Intoxicating Liquors—Criminal Prosecution—Sufficiency of Evidence.**

2. In a nuisance prosecution for selling intoxicating liquors, testimony of a so-called informer employed for the express purpose of procuring evidence, who was corroborated to some extent, warrants a conviction.

**Intoxicating Liquors—Criminal Prosecution—Return of Seized Liquors.**

3. Under Laws of 1915, page 150, providing for one complaint and warrant upon which are based distinct proceedings for maintaining

a nuisance and a proceeding *in rem* against the seized liquors, the court cannot order the seized liquors returned to defendant upon his acquittal on the nuisance charge.

From Multnomah: HENRY E. McGINN, Judge.

Department 1.   Statement by MR. JUSTICE BENSON.

The district attorney for Multnomah County filed a complaint in the District Court for said county charging the defendant with "unlawfully keeping and maintaining a place as a common nuisance," by keeping for sale, barter and delivery, in violation of law, certain intoxicating liquors at number 890 East Yamhill Street, Portland.   The title of the court and cause as found in the complaint, reads thus:

"*In the District Court of the State of Oregon for the County of Multnomah.*

STATE OF OREGON,
         vs.                     }
GEO. L. HOFFMAN, Defendant.

                    Misdemeanor.
      Chapter 141, General Laws of Oregon, 1915."

Thereafter, on the same day, a warrant of arrest, search and seizure was issued under the following caption:

"*In the District Court of the State of Oregon for the County of Multnomah.*

STATE OF OREGON,
         vs.                                    }
JOHN DOE, Whose True Name is Unknown,
                              Defendant.

Warrant for Search and Seizure and Arrest."

The return of the sheriff discloses that by virtue of this warrant he searched the premises described

therein, seized a considerable quantity of liquors, and "pursuant to the within order, arrested John Doe (George Hoffman) in the county of Multnomah, the keeper thereof, and I have him now in custody before the court." The defendant entered a plea of not guilty, a trial was had resulting in a conviction from which the defendant appealed to the Circuit Court where, upon a trial to the jury, there was a verdict of acquittal and judgment discharging the defendant and directing the sheriff to return to him the liquors which had been seized at the time of the arrest. From this judgment the state appeals.

For the State there was a brief over the names of *Mr. Thomas G. Ryan,* Deputy District Attorney, *Mr. Walter H. Evans,* District Attorney, and *Mr. George Mowry,* Deputy District Attorney, with an oral argument by *Mr. Ryan.*

For respondent there was a brief over the name of *Messrs. Manning, Slater & Leonard,* with an oral argument by *Mr. John Manning.*

MR. JUSTICE BENSON delivered the opinion of the court.

This appeal is taken under the authority of Section 34 of Chapter 141, Laws of Oregon, 1915, which reads as follows:

"An appeal to the supreme court may be taken by the state from the judgment or order of the circuit court in all cases arising under this act, upon a judgment for the defendant quashing the indictment, or upon a judgment of acquittal entered on a verdict, whether ordered by the court or otherwise, for the purpose of determining questions of law, but not for the purpose of obtaining a new trial; but nothing in this section contained shall be construed to abridge any

right of appeal which the State may have otherwise under the criminal laws of this State.''

1. The first assignment of error challenges the ruling of the court in refusing to allow the prospective jurors, upon their *voir dire,* to answer this question:

''If, in a prosecution for unlawfully selling intoxicating liquors or for keeping intoxicating liquor for unlawful sale, a portion of the evidence produced by the state should consist of the testimony of what is commonly known as an informer, namely, a person whose testimony is to the effect that he bought intoxicating liquor for the sole purpose of securing evidence against the seller, have you any such prejudice against testimony of that class or against witnesses of that class, or against cases in which such testimony is used, as would prevent you from giving a fair, just and impartial verdict in such a case?''

It will be noted that the question goes to the juror's opinion of the credibility of ''informers'' as witnesses. In the case of *Jenkins* v. *State,* 31 Fla. 196, 198 (12 South. 677), a juror was asked this question:

''Is your mind in such a state that you would or could give the evidence of an Ethiopian or descendant of the African race the same weight that you would that of a Caucasian or descendant of the white race, in rendering a verdict upon this case?''

Mr. Justice TAYLOR speaking for the court says:

''This question was not at all a proper one to be put to a juror on the *voir dire,* as it did not seek or tend to demonstrate the juror's bias for or prejudice against the prisoner, but was an effort to make the juror, in advance of the production of evidence in the cause, disclose what class of witnesses he would or would not give credence to. A field of inquiry that is not proper to be gone into in testing the qualification of jurors on the *voir dire.* To illustrate its impropriety: Suppose the prisoner's counsel has put this question to the

jury: 'John Doe, who is a white man, and Richard Roe who is a colored man, will be witnesses in this case: Richard Roe the colored man will be the defendant's witness, Doe will be the witness against him—will you, or can you give as much credence or weight to Roe's evidence as to that of Doe in rendering your verdict? Should the juror answer that Doe's would weigh the strongest with him, it would not demonstrate any element of incompetency, bias or prejudice in the juror *as such* to sit in judgment on the prisoner's case, but, such an answer from the juror would only demonstrate the ill fortune of the prisoner in having Roe for a witness, or rather in not having some one else as a witness more creditable than Roe.''

In *State* v. *Holedger,* 15 Wash. 443 (46 Pac. 652), objections were sustained to the following questions:

" 'Would you attach more importance or credibility to the word of a preacher outside of court than any other gentleman,' and * * 'Would you attach more credence to the testimony of Dr. McInturff, a minister of the gospel, than that of any one else?' ''

The court speaking through Mr. Justice DUNBAR dismisses the assignment of error with these words:

"These questions are so apparently improper and irrelevant that we do not feel called upon to enter into discussion of them.''

The question in the case at bar, while more skillfully framed than those quoted, is in the same class so far as the purpose and result are concerned and we think the trial court did not err.

2. Our attention is next called to the action of the court in directing a verdict for the defendant. This ruling was based upon the theory that the state has no right to employ a witness to purchase liquor from a defendant for the express purpose of securing evidence upon which to base a prosecution for violation of law. The trial court expressed its views thus:

"The court's ruling is that when the state encourages a person to commit a crime, it cannot take advantage of its own wrong."

The evidence discloses that a witness named Hammond, employed by the state as a detective, purchased from defendant the liquor upon which the criminal proceeding is based.    There was also other evidence in corroboration.    Our attention has not been called to any authorities supporting the position taken by the trial court and, in an independent investigation, we have been unable to find any.    On the contrary, in *State* v. *Barber,* 2 Kan. App. 679 (43 Pac. 800, 802), in a similar case the Kansas Court of Appeals says:

"And, finally, the defendant asks this court to reverse the judgment, and order a new trial, on the ground that the only witness who testified to the particular sale of which the defendant was convicted admitted, upon cross-examination, that he had been furnished the money with which to make the purchases testified to by him; that he at that time expected to be used as a witness against the defendant; that he had been hired to make the complaint, and to become a witness; that he cared nothing about the enforcement of the law; and that, in making the complaint and becoming a witness in this case, he was prompted solely by the money which had been promised him by others. In other words, this court is asked to declare, as a matter of law, that such a witness is unworthy of belief, and that the defendant should not be deprived of his liberty, property, or reputation on the unsupported testimony of a 'spotter', although such evidence was uncontradicted, and no attempt was made to impeach the witness, save by showing the motives which prompted him to do what he did towards securing the conviction of the defendant.    The trial court was not requested to submit to the jury an instruction embodying that proposition, and we know of no law which would have authorized such an instruction.    Neither do we know of any precedent which we might follow, were

we to declare the rule to be as argued, even if we entertained the views expressed by counsel.''

This court has adopted the same view in *State* v. *Emmons,* 63 Or. 535 (127 Pac. 791). Therefore the trial court erred in directing a verdict of acquittal.

3. Finally, it is urged that the court had no jurisdiction to order the liquors seized under the warrant to be returned to the defendant. This proceeding is based upon the provisions of Chapter 141, Laws of Oregon, 1915. Section 15 of the act declares that all places where intoxicating liquors are manufactured, sold, bartered or given away, in violation of law, and all intoxicating liquors kept for sale, barter or delivery, in violation of law, are common nuisances. Sections 20, 21 and 22 of the act prescribe the procedure for punishing the keeper and destroying the liquors, and are as follows:

''Upon the filing of a complaint, information or indictment charging that a place is kept or maintained as a common nuisance by any person or persons, and that intoxicating liquors, bottles, glasses, kegs, pumps, bars or other property are kept or used therein in keeping and maintaining such place as a common nuisance, a warrant shall be issued commanding the officer to whom it is directed to arrest the person or persons charged or described as the keeper or keepers, and to search the place described in such complaint, information or indictment, and to seize and take into his custody all intoxicating liquors, glasses, bottles, kegs, pumps, bars or other property described in said complaint or information which he may find at such place, and safely keep the same subject to the orders of the court. The complaint or information shall be supported by oath or affirmation and shall describe the place to be searched with sufficient particularity to identify the same, and shall describe the intoxicating liquors, or other property alleged to be used in main-

taining the same, as particularly as practicable, but any description, however general, that will enable the officer executing the warrant to identify the property to be seized, shall be deemed sufficient. Upon the return of the warrant, the court shall proceed as in other cases against the person or persons arrested: Section 20.

"Whenever any intoxicating liquor or other property shall be seized under such a warrant, whether an arrest has been made or not, a notice shall issue within forty-eight hours after the return of the warrant in the same manner as a summons, directed to the defendant or defendants in such action, and to all persons claiming any interest in the intoxicating liquors, or other property, and fixing a time not less than five days from the service thereof and a place at which any and all persons claiming any interest therein may appear and answer the complaint made against such intoxicating liquors or other property, and show cause, if any they have, why the same shall not be adjudged a nuisance and ordered destroyed. Such notice shall be served upon the defendant or defendants in such action in the same manner as a summons, if they be found within the jurisdiction of the court, or otherwise by publication according to the laws governing publication of summons in civil suits, and a copy thereof shall also be posted in a conspicuous place upon the premises where such property was seized. If, at the time for filing answer, such notice has not been duly served, or other sufficient cause appear therefor, the time for answering may be by the court extended and such other notice issued as will supply any defect in the previous notice and give reasonable time and opportunity for all persons interested to appear and answer. At or before the time fixed by notice, any person claiming an interest in the intoxicating liquors, or other property seized, may file his answer in writing, setting up his claim thereto, and shall thereupon be deemed a party defendant to the proceedings against such liquor or other property. The complaint or information and answer or answers

that may be filed shall be the only pleadings required; and at the time fixed for answer, or any other time then to be fixed by the court, a trial shall be had in a summary manner before the court, sitting without a jury, of the allegations of the complaint or information against the liquor or other property seized; and whether any answer shall be filed or not, it shall be the duty of the district attorney to appear and adduce evidence in support of such allegations.

''If the court shall find that said intoxicating liquors or other property, or any part thereof, were, at the time the complaint or information were filed, being used in maintaining a common nuisance, he shall adjudge forfeited so much thereof as he may find was being so used, and shall order the officer, in whose custody it is, publicly to destroy the same, and such officer shall make a return thereof to the court in which such action is pending, showing that he has complied with the said order so made and entered. So much of the intoxicating liquor or other property as the court shall not find to have been used in maintaining a common nuisance he shall order returned by the officer, in whose custody it is, to the place or as near as possible to the place from which it was taken, or delivered to the person establishing his claim to the same. If the court shall find that any of such liquors or other property was, at the time the complaint or information was filed, being used in maintaining a common nuisance, and also find that it was being used by any person served with the notice provided for in the previous section of this act, or by any person filing an answer, as in said section provided, so that it was then owned or claimed by any such person and by him knowingly allowed to be so used, the court shall render judgment against such person for the costs of the proceedings against the intoxicating liquors or other property so used or owned by him. If the court shall not find that any of the said intoxicating liquors or other property seized was, at the time the complaint or information was filed, being used in maintaining a common nuisance, or shall not find that any of it was being so used,

or so owned and allowed to be used, by any person served with the notice aforesaid, or voluntarily becoming a party as aforesaid, the costs of the proceedings against such property shall be paid as in criminal cases. Either the state, or any defendant or other person claiming the property seized, may appeal from the judgment of the court in any such special proceeding against property seized, in the manner provided for the taking of appeals in criminal cases, except that the appeal must be taken within ten days unless the time be extended by the court, for good cause shown; and any claimant of such property who appeals, in order to stay the proceedings, must give an undertaking with two or more sureties to the State of Oregon, to be approved by the trial court, in a sum of not less than $100 nor less than double the costs adjudged against him, conditioned that he will prosecute his appeal without unnecessary delay, and that if judgment be rendered against him on appeal, he will satisfy such judgment and costs. No bond shall be required for an appeal by the State, and such appeal shall stay the execution of judgment'': Section 22.

It will be seen at once that there is but one complaint and one warrant upon which are based two distinct proceedings. One against the keeper for the misdemeanor involved in maintaining the nuisance and, the other, a proceeding *in rem* against the liquors. The last sentence of Section 20 says:

''Upon the return of the warrant, the court shall proceed as in other cases against the person or persons arrested.''

Section 21 provides for condemnation proceedings against the liquors in a separate action upon the same complaint, but with different answers, and, if the circumstances of the particular case warrant it, with different parties, and upon this branch of the case the property is either destroyed or returned to the owner as the facts disclosed upon the trial may indicate. The

case before us for present consideration is the criminal action against the keeper and when it was taken by appeal from the district court, the proceeding *in rem* did not accompany it.

The state of Maine has a somewhat similar statute, enacted in 1858, and the Supreme Court of that state in the case of *State* v. *Bartlett,* 47 Me. 388, 395, says:

"The statute, c. 33, laws of 1858, under which the liquors in controversy were seized, contemplates that liquors may be found in the custody of one person, but may be owned and intended to be used for lawful or unlawful purposes by other persons. It therefore provides for the punishment of the persons who kept or have in their possession liquors with intent to sell the same unlawfully. It also provides that the owner of the suspected liquors, or those entitled to their possession, may come in and defend them against the charge of being intended for sale in violation of law.

"These two proceedings, though originating in the same preliminary charge, are, in the end, entirely distinct. One terminating in a judgment in which the status of the liquors is determined; the other, in a judgment, in which the guilt or innocence of the party having such liquors in custody is determined."

This excerpt is a very clear exposition of our own statute. In the case at bar, the only question which was before the Circuit Court was the guilt or innocence of George L. Hoffman, and the order for the return of the liquors was without jurisdiction and therefore void.

If the other branch of the proceeding is still pending in the District Court, as we understand that it is, there is nothing to prevent that court from disposing of it.

The question of the effect of the judgment of acquittal in this case is not before us and we do not undertake to decide whether it is a bar to the action against the liquors. Neither do we pass upon the

problem as to whether a "John Doe" warrant of search and seizure, issued upon a complaint which discloses the true name of the keeper, will justify such search and seizure.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE BURNETT and MR. JUSTICE HARRIS concur.