[No. 3350. Oct. 9, 1929.]

[Rehearing Denied Dec. 11, 1929.]

STATE v. POICH.

[282 Pac. 870.]

424

Fred C. Stringfellow, of Raton, for appellant.

R. C. Dow, Atty. Gen., and Frank H. Patton, Asst. Atty. Gen., for the State.

### OPINION OF THE COURT

WATSON, J. Appellant was convicted of operating a crap game for money. The case was simple. For the state two witnesses swore that they were present and saw appellant operating the game; one of them, that he participated in it. Appellant admitted that he was present at the time and place in question, but claimed that he was merely playing solitaire.

The two witnesses for the state were private detectives who were brought to Raton by the district attorney, and employed by him to run down gamblers and bootleggers, with an agreement to pay them for their time, and to

reimburse them for their expenses, including gambling losses. Such payments were made out of the county treasury upon vouchers approved by the district judge. Several questions arise from this fact.

 On voir dire the district attorney inquired of the jurors in substance whether, if it should develop that all state's witnesses had been employed by the officials of the district to run down gamblers and bootleggers, the jurors would be prejudiced by the fact, and whether they would apply the same rule in arriving at the weight to be given the testimony of such witnesses as they would apply in the case of other witnesses. The defense objected to the questions "as prejudicial, and tending to intimidate the jurors, and an attempt to establish in the minds of the jury the fact that the officers of this district vouch for their acts, and to give such credence to their testimony as their testimony is not entitled to."

On direct examination of the state's witnesses, and over the same objection as just stated, the facts above recited as to the employment and payment of these witnesses were fully brought out.

The trial court rejected appellant's requested instructions, which were as follows:

"Defendant's Requested Instruction No. I. The jury are instructed that, in weighing the testimony of the detectives in this case, greater care should be exercised in relation to the testimony of a detective employed in hunting up evidence, who is interested in or employed to find evidence against the accused, than in other cases, because the natural and unavoidable tendency and bias of the mind of such person to construe everything as evidence against the accused, and to disregard everything which does not tend to support a preconceived opinion of the matter in which such person is engaged.

"Defendant's Requested Instruction No. II. The jury are instructed that the fact that a witness is or is not a paid detective does not at all settle the question whether he does or does not tell the truth, and the mere fact that witnesses testifying in this case are paid detectives does not justify you in disregarding their testimony, although the fact that they are paid detectives is one which you are entitled to, and should, take into consideration in determining whether they are or are not telling the truth."

In general, the matter of inquiry upon voir dire is within the discretion of the trial court. Terr. v. Lynch,

18 N. M. 15, 133 P. 405; State v. Douthitt, 26 N. M. 533, 194 P. 879. In the former case it was established, however, that the inquiry was not to be limited to matters which would constitute legal disqualification, but that enough latitude must be permitted to enable an accused person intelligently to exercise the right of peremptory challenge, and, specifically, where a homicide grew out of attempted enforcement of prohibition, that it was error to deny accused the right to inquire whether a juror had strong leanings for or against prohibition. Similar to the division of sentiment and opinion on prohibition, mentioned in that case, is the division regarding the propriety of employing paid informers in the enforcement of laws of that class. If the accused must be given the privilege, it may be given to the state. Prejudice to appellant was conjectural and incidental, and not controlling.

Such questions as these are not deemed proper in some jurisdictions. See State v. Hoffman, 85 Or. 276, 166 P. 765, 1 A. L. R. 1683, and the Florida and Washington decisions there cited. These cases do not hold, however, that it is reversible error to permit such questions, but only that an accused person has no legal right to ask them. Those cases are further distinguishable from the case at bar. There the inquiries were whether the jurors would give the same credit to a particular person or class of persons as to other witnesses. Here the jurors were asked only whether they would apply to the testimony of paid informers the same rule as in the case of other witnesses. The rule is the same for all classes of witnesses. It was correctly stated by the court in instruction IX, directing the jurors to

"Consider the fairness, unfairness, bias, prejudice or interest, if any, in the result of your (their) verdict, * * * their demeanor while testifying; their apparent carefulness and fairness on the stand; their opportunity for knowing and correctly relating the facts, and whether their testimony is positive or negative in character, and determine from all the evidence where the truth in the case lies."

As to the disclosure of the character of the witnesses as paid informers, and the source of their employment, it is contended that this was to impress the jury that the prosecuting officers, including the trial judge, were be-

hind the prosecution, to vouch for the witnesses, to throw the weight of their influence into the scales, and that the state had no right, in the absence of attack upon the character of its witnesses, thus to support their credibility. It is, of course, matter of conjecture whether by thus showing the character of its witnesses the state gained or lost, and whether, if the state had failed to do so, the defense would have brought out the facts. There may be merit in appellant's contention, standing alone. The Attorney General argues, however, that it was proper for the state to bring out such facts as would disclose that the witnesses were not accomplices. This contention is not met in the reply brief, and we take it as an admission of its soundness. We therefore overrule appellant's contention, without deciding either of the questions.

As to the credibility of the witnesses and the weight to be given their testimony, the court gave the general stock instruction above referred to as No. IX, and further gave Nos. X and XI, as follows:

"X. If you believe that any witness has knowingly or willfully testified falsely as to any material fact in evidence in this case, you are then at liberty to reject all or any portion of the testimony of such witness, unless the same is corroborated by other competent evidence in the case which you believe to be true.

"XI. You are instructed that the defendant is a competent witness in his own behalf, and when he offers himself as a witness in this case, he becomes as any other witness, and his credibility is to be tested by, and subjected to the same tests as are applied to any other witness. In determining the degree of credibility that should be given to the testimony of the defendant, the jury has a right to take into consideration the fact that he is interested in the result of the prosecution, as well as his demeanor, and conduct on the witness stand, and you may take into consideration all the facts and circumstances proved in the case tending to corroborate or contradict the testimony given by the defendant, and then give to the testimony of the defendant such weight and credit as you deem it entitled to receive."

It is argued here that the refusal of requested instructions No. I and II is erroneous in view of the giving of instruction No. XI. The contention finds support in State v. Snyder, 8 Kan. App. 686, 57 P. 135. See, also Sandage v. State, 61 Neb. 240, 85 N. W. 35, 87 Am. St. Rep. 457, whence appellant evidently borrowed the language of his requested instruction No. I.

■ From the standpoint of justice and fairness the contention has its appeal. Yet we think we should not entertain it in this case. As a legal proposition, it does not seem to have been urged in the trial court. Appellant made no objection to instruction No. XI, and concedes here that it was properly given. In his exceptions he did not urge any relation between the giving of instruction No. XI and the refusal of his requested instructions.

■ Considered independently of a cautionary instruction regarding the testimony of the accused, there seems to be a difference of authority and practice as to the duty of the trial court to caution as to the testimony of informers. In this jurisdiction it is not only well understood that the jury is the sole judge of the credibility of the witnesses and of the weight to be given to their testimony, but the statute prohibits comment by the judge upon the weight of the evidence. Code 1915, § 2796. There is no different rule for weighing the testimony of different classes of witnesses. The jury should always consider bias, prejudice, or interest, as directed in instruction IX. The only purpose of cautionary instructions is to point out, what counsel are at perfect liberty to argue, and what any intelligent juror will readily grasp, that the bias or interest, whatever it may be, detracts from credibility. The court cannot do this without commenting to an extent on the weight of the evidence.

Even if we were to hold it consistent with our statute to caution the jury that they were at liberty to consider the possible interest of a paid informer, we doubt if it would be proper to direct the jury as a matter of law to exercise greater care with respect to such testimony, or to include the latter and purely argumentative portion of requested instruction No. I. In the case at bar that portion is particularly inapt. Here a simple question of veracity is involved. There could be no question whether the state's witnesses, because of their interest in a conviction, had given a false color to an innocent transaction, or had remained blind to or suppressed mitigating circumstances. Appellant was either operating a game of craps or he was not. In a case of this kind, if the court were to give any reason for his caution, it could be only that

paid informers, in order to advance their own interests, might commit flat perjury.

It is clear in this case that substantial justice has been done, unless the state's witnesses have perjured themselves. The jury evidently credited their testimony, as it had a right to do. So we conclude that a reversal is not warranted either by the contention as made here or by that made below.

■ Over the appellant's objection, one of the state's witnesses, having mentioned Joe O'Brien as a person present on the occàsion in question, was permitted to testify that said O'Brien was then in jail. So far as the record discloses, it was immaterial. If the state had any purpose in showing the fact, it abandoned it. It is contended that it was prejudicial to show that a companion and associate of appellant was of such a character as to bring him to jail. But no connection whatever is shown between O'Brien and appellant, except that O'Brien, among many others, chanced to be in the room. The utter immateriality of this evidence, which would have rendered it proper to exclude it, deprives it of any prejudicial effect. Being without prejudice, the admission of the evidence cannot result in reversal. State v. Pruett, 22 N. M. 223, 160 P. 362, L. R. A. 1918A, 656; State v. Kidd, 24 N. M. 572, 175 P. 772; State v. Edmondson, 26 N. M. 14, 188 P. 1099; State v. Taylor, 26 N. M. 429, 194 P. 368; State v. Martin, 32 N. M. 48, 250 P. 842.

■■ Over appellant's objection, the state's witnesses, after having testified that appellant was operating a crap game on September 6th, were permitted to testify that on the 5th, at the same place, he was operating a stud poker game. The jury was instructed (No. VI) that it must be satisfied beyond a reasonable doubt "that on the 6th day of September, 1927, or at any other time within two years next prior to the 24th day of September, 1927, when the information was filed, the defendant did unlawfully operate a certain game of chance, to-wit: Craps, and that said game of chance was then and there operatel by him for money."

After submission of the cause, the jury returned, and through its foreman reported that some of its members would like to have the court "further enlighten them as to your meaning of Instruction No. 6. They would like to know whether or not the jury is confined to the particular date shown in the information, September 6th, or whether or not they may spread the time two years prior." Thereupon, over objection the court gave in addition instruction VI-A, as follows:

"It is not neccessary that the crime charged should have occurred on any particular day or date, but you must believe from the evidence in the case, beyond a reasonable doubt, that the very offense charged, and not some other, occurred at some time within two years immediately preceding the date when the information was filed which was the 24th day of Setpember, 1927, before you could convict the defendant."

Upon the facts just recited, appellant bases two contentions: First, that it was error to admit the testimony as to the operation of a stud poker game on September 5th; second, that, having admitted such testimony, it was error to give Instructions VI and VI-A.

That the evidence was improperly received we do not doubt. State v. Alford, 26 N. M. 1, 287 P. 720. But under the authorities above cited, unless prejudicial, the error need not result in reversal. That the jury could have been influenced by it in finding appellant guilty of operating a crap game on the 6th we cannot conceive. It had no tendency whatever to prove it. The testimony of the one transaction was exactly the same as that of the other. The denial of both transactions was the same. The jury could not have believed one and disbelieved the other. The result must have been exactly the same, with or without the evidence erroneously admitted.

In seeking to show that this evidence was or might have been prejudicial, appellant points to the return of the jury and its request for an explanation of instruction VI. This of course indicates that the jurors were not all satisfied as to the meaning of that instruction. There is nothing, however, to indicate that there was any thought that there could be a conviction of the transaction of the 5th, and it would have been impossible under all the instructions, in-

cluding VI-A, for the jury to miss the point that appellant could be convicted only upon the transaction of the 6th.

Instruction VI is a stock instruction. It is necessary in a case where there is a confusion of dates. Where, as in this case, there is complete agreement on the date, we confess we see no good purpose in giving it. We appreciate also that, where evidence of other offenses on other dates has been received, the instruction may be confusing and dangerous, and it should be plainly charged that there must be an agreement by the jurors of the guilt of the accused of the particular offense for which he is on trial. But the very reason that rendered the instruction unnecessary in this case also makes it nonprejudicial. The jury cannot have understood that there could be a conviction of any other offense than that of operating a crap game, and there was not a scintilla of evidence that appellant operated such a game on any other date than the 6th. If the evidence had shown that on the 5th appellant was operating a crap game, a different question would be presented.

Finding no reversible error, we affirm the judgment and remand the cause. It is so ordered.

BICKLEY, C. J., and PARKER, J., concur.

CATRON and SIMMS, JJ., did not participate.